Garnett **RUSH**

v.

**Honorable Thomas O. STANSBURY,**
**Judge et al.**

No. C–2312.

Supreme Court of Texas.

April 25, 1984.

Rehearing Denied May 23, 1984.

Haynes & Fullenweider, Clinard J. Hanby, Houston, for relator.

Ronald G. Fitzgerald, Houston, for respondent.

KILGARLIN, Justice.

This is an original mandamus proceeding which involves conflicting child custody decrees from Texas and Tennessee courts. The respondent district judge has rendered two orders: the first modified a Tennessee custody order by changing managing conservatorship to the father; and, the second denied Mrs. Rush's petition for writ of habeas corpus. We hold that the Tennessee decree takes precedence over the Texas action and, therefore, conditionally grant the writ of mandamus.

Garnett (Dantzler) Rush, relator, and Hubert Clark Dantzler, Jr., the real party in interest, were divorced in Tennessee on September 16, 1980. At that time Mrs. Rush was awarded custody of their two minor children, Hubert III and Garnett Palmer Dantzler. In December, 1981, Mr. Dantzler moved to Stafford, Ft. Bend County, Texas. Shortly thereafter he filed a suit in the Tennessee court seeking change of custody, which was granted. On September 1, 1982, Mr. Dantzler brought the two children with him to Texas. On January 5, 1983, Mrs. Rush filed a suit in the same Tennessee court seeking to have the custody of the children returned to her. Mr. Dantzler appeared and contested the suit, but on April 26, 1983, an order was signed granting Mrs. Rush her requested relief. On April 28, 1983, Mr. Dantzler filed suit in the district court of Ft. Bend County, seeking a change of managing conservatorship under Texas law. Mrs. Rush responded with a plea in abatement, special appearance and a motion to take judicial notice of Tennessee law. Subsequently, Mrs. Rush filed a petition for writ of habeas corpus in the district court of Ft. Bend County, seeking possession of the children (Mr. Dantzler had not returned them to Mrs. Rush, in violation of the Tennessee order). A hearing on all matters was conducted by the Texas court on July 15, 1983,

and four days later the judge rendered orders denying habeas corpus relief and naming Mr. Dantzler temporary managing conservator of the two children. Mrs. Rush filed her motion for leave to file petition for writ of mandamus on July 27, 1983. She also utilized self-help by "kidnapping" the children and taking them back to Tennessee. Mr. Dantzler responded by going to Tennessee and "kidnapping" back the older child, Hubert III, and bringing him to Texas. An arrest warrant has been issued for Mr. Dantzler in Tennessee and an arrest warrant has been issued for Mrs. Rush in Texas.

To complicate matters further, the Texas court held a trial on the merits of conservatorship after which a decree was signed on August 3, 1983 granting managing conservatorship to Mr. Dantzler. That judgment has been appealed by Mrs. Rush and has been docketed as 14–83–650CV in the Court of Appeals for the Fourteenth Supreme Judicial District. Argument in the case was on April 12, 1984. There has been no decision by the court of appeals.

The Parental Kidnapping Prevention Act of 1980 (28 U.S.C. § 1738A) (PKPA) requires every state to give full faith and credit to child custody determinations of other states. Paragraph (f) of such Act provides:

A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

Many of the provisions of the Tennessee Child Custody Act are substantially similar to those of the Uniform Child Custody Jurisdiction Act (UCCJA)[1], which Texas has adopted. Section 3 of the UCCJA pertains to jurisdiction and Tex.Fam.Code Ann.

§ 11.53 (Vernon Supp.1984) is the Texas equivalent. Section 36–1303, Tenn.Code Ann. (Supp.1983), is the Tennessee corresponding statute. The pertinent portion of section 3 of the UCCJA provides as follows:

(a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree (or order) if:

(1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; ...

"Home state" is defined by UCCJA § 2[2] as being "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months ..."

Because the children had lived in Texas more than six months before Mr. Dantzler initiated his suit in Ft. Bend County, it would initially appear that Texas could claim jurisdiction. However, because the children had not been gone from Tennessee for more than six months at the time Mrs. Rush filed her suit there to change custody, Tennessee can rightly claim jurisdiction. But, the apparent conflict does not exist because UCCJA § 14[3] reads in pertinent part as follows:

(a) If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in ac-

1.  9 Uniform Laws Ann. 116.

2.  Tex.Fam.Code Ann. § 11.52 (Vernon Supp. 1984); Tenn.Code Ann. § 36–1302 (Supp.1983).

3.  Tex.Fam.Code Ann. § 11.64 (Vernon Supp. 1984); Tenn.Code Ann. § 36–1315 (Supp.1983).

cordance with this Act or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction.

Clearly, the Tennessee court had jurisdiction under its laws to render the custody order of April 26, 1983. Equally clear is that under Tex.Fam.Code Ann. § 11.64 (Vernon Supp.1984), the district court of Ft. Bend County did not have the authority to render its conservatorship decree of July 19, 1983. It was obligated under the PKPA to give full faith and credit to the Tennessee order.

We note that in *Finney v. Finney*, 619 S.W.2d 130 (Tenn.Ct.App.1981, cert. den.), a very similar situation involving the same statutes was presented. In that case the mother resided in Tennessee and the father in Texas. The distinction is that the original custody decree was by a Texas court. The mother had sought modification by a Tennessee court, which was held not to have jurisdiction because under the Tennessee Child Custody Act, Texas was the "home state" of the minor child.

Having found that the district court of Ft. Bend County exceeded its powers by interfering with the Tennessee order, the right to possession of the two children is controlled by the prior Tennessee court decree. Therefore, under Tex.Fam.Code Ann. § 14.10 (Vernon Supp.1984), Mrs. Rush is entitled to possession of the children.

We assume that Judge Stansbury will vacate his July 19, 1983 order denying Mrs. Rush's petition for writ of habeas corpus. We further assume that he will grant the writ of habeas corpus, ordering return of Hubert Dantzler III to Mrs. Rush. If he does not, a writ will issue.